**Gloria J. LaFLEUR, Appellant,**

v.

**SHONEY'S, INC., d/b/a Fifth Quarter, Appellee.**

**No. 2000–SC–0456–DG.**

Supreme Court of Kentucky.

May 16, 2002.

As Modified May 30, 2002.

Rehearing Denied Sept. 26, 2002.

---

R. Dale Warren, Louisville, Counsel for Appellant.

Matthew J. Baker, Matthew P. Cook, Cole, Moore & Baker, Bowling Green, Counsel for Appellee.

JOHNSTONE, Justice.

Appellant, Gloria J. LaFleur, appeals a decision from the Court of Appeals, which reversed the trial court's damage award and remanded for entry of a reduced judgment. The Court of Appeals' opinion turns on our interpretation of CR 8.01 in *Fratzke v. Murphy*, Ky., 12 S.W.3d 269 (1999). We affirm.

LaFleur stepped off a sidewalk onto the parking lot of the Fifth Quarter restaurant, fell and was injured. Subsequently, she filed suit against Fifth Quarter seeking compensation for lost wages, past and future pain and suffering, and past and future medical bills. During discovery, Fifth Quarter propounded written interrogatories to LaFleur and, after more than thirty days had passed without response, moved the trial court to compel LaFleur to answer. LaFleur filed her answers to these interrogatories about four weeks later.

In her answers, LaFleur claimed $5,563.72 in medical expenses and $1,122.10 in lost wages. Additionally, she claimed no specific amount for either special damages or unliquidated damages. Instead, she stated that any special damages were "undetermined." As to the unliquidated damages, she stated, "Plaintiff will supplement this information prior to trial."

The trial was set for February 16, 1999. The trial court ordered that all claims for damages be exchanged with opposing counsel and filed in the record no later than ten days before trial. On February 11, 1999, LaFleur's counsel filed a compliance with the trial court's order. The compliance listed medical expenses of $27,604.12 and lost wages and lost ability to earn money at $633,440.00. As these dates reflect, the compliance was not filed within the time period ordered by the trial court. The compliance was sent to defense counsel by U.S. mail and did not arrive until Monday, February 15, 1999, which was the day before the trial.

On the morning of trial, Fifth Quarter made a motion in limine to preclude any evidence that might suggest to the jury that LaFleur's damages exceeded the damages claimed in her interrogatory responses. The trial court denied the motion. Fifth Quarter then moved for a continuance on grounds that its preparation of the defense of this case had been based on its assumption that its liability exposure was limited to $6,685.82, which was the amount of damages claimed in LaFleur's interrogatory answers. The trial court denied this motion as well.

The jury awarded LaFleur $75,000.00 for past and future pain and suffering. Additionally, the jury awarded LaFleur $14,823.00 for medical expenses incurred to date, which award was not to exceed $27,604.12. Fifth Quarter appealed on the issue of damages. The Court of Appeals reversed and remanded. It concluded that LaFleur failed to supplement her answers to Fifth Quarter's interrogatories as required by CR 8.01(2), and reversed under *Fratzke, supra.* The Court of Appeals remanded the case with instructions that the trial court enter a judgment for $5,563.72 in medical expenses and $1,122.10 in lost wages, which were the only amounts of damages claimed by LaFleur in her answers to interrogatories. We granted discretionary review and affirm for the reasons set forth below.

In *Fratzke,* the plaintiff was injured when she was hit by a car while walking a picket line. *Fratzke,* 12 S.W.3d at 270. She sued the driver and claimed general damages in the complaint for medical expenses, pain and suffering, and impairment to earn money. *Id.* The defendant propounded interrogatories to the plaintiff requesting that she identify and quantify each of her claims for damages. *Id.* In her response to these interrogatories, Fratzke merely included an itemized list of medical expenses. *Id.* The trial court entered an order that trial briefs be filed at least twenty days before trial and that these briefs contain an itemized list of any special damages claimed by the parties. *Id.* The plaintiff failed to comply with this order in that she did not include any of her

claims for unliquidated damages in her trial brief. *Id.*

After closing arguments, defense counsel objected to instructing the jury on damages other than medical expenses. *Id.* The trial court overruled the objection and instructed the jury on both the medical expenses and the unliquidated claims. *Id.* at 271. The Court of Appeals affirmed the trial court. *Id.* We reversed this decision and remanded the case to the Court of Appeals to reconsider its opinion in light of *Burns v. Level,* Ky., 957 S.W.2d 218 (1997). *Id.* On remand, the Court of Appeals reversed the trial court's award of unliquidated damages. *Id.*

■ We took discretionary review of this latter Court of Appeals' decision and affirmed. *Id.* at 273. We concluded that the plaintiff's claims for unliquidated damages were effectively zero, because she utterly failed to disclose the amount of her claims for unliquidated damages as was required by CR 8.01(2), *id.,* which states:

> In any action for unliquidated damages the prayer for damages in any pleading shall not recite any sum as alleged damages other than an allegation that damages are in excess of any minimum dollar amount necessary to establish the jurisdiction of the court; provided, however, that all parties shall have the right to advise the trier of fact as to what amounts are fair and reasonable as shown by the evidence. When a claim is made against a party for unliquidated damages, that party may obtain information as to the amount claimed by interrogatories; if this is done, *the amount claimed shall not exceed the last amount stated in answer to interrogatories.*

(Emphasis added).

In the case at bar, LaFleur attempts to distinguish *Fratzke* on two different bases. First, LaFleur argues that, unlike the factual scenario in *Fratzke,* she did answer the interrogatory as to unliquidated damages. She claims that her answer that these claims were undetermined at the time, or would be supplemented later, put defense on notice that claims would be litigated at trial. But as we noted in *Fratzke,* the purpose of the rule is to notify the opposing party of the *amount* of unliquidated damages at stake.

Next, LaFleur argues that her belated filing of the trial compliance did supplement her answers. This is different, she claims, than in *Fratzke* where the plaintiff attempted to supplement her answers on the last day of trial. We disagree. LaFleur's attempt to supplement did not comply with the trial court's trial compliance order that all claims for damages be exchanged between the parties ten days before trial. LaFleur did not move the trial court for leave to file her trial compliance late. Nor did she move the trial court for leave to file supplemental answers to interrogatories. LaFleur's attempt at supplementing her answers five days before trial violated the trial court's order and was not seasonable. As we see little difference between providing supplemental answers to interrogatories to the defense on the day before trial and providing them to the defense on the last day of trial, we are compelled to hold that the Court of Appeals reached the correct result under *Fratzke.*

We now turn to LaFleur's argument that the result reached by the Court of Appeals is a harsh miscarriage of justice flowing from the rigid construction of the rules of civil procedure. This argument not only ignores the plain language of the rule, but also seriously discounts the purpose of CR 8.01(2) and the discovery rules in general.

We begin our discussion with the purpose of the discovery rules. Pretrial discovery simplifies and clarifies the issues in a case; eliminates or significantly reduces the element of surprise; helps to achieve a balanced search for the truth, which in turn helps to ensure that trials are fair; and it encourages the settlement of cases. *See, e.g., Elkins v. Syken,* 672 So.2d 517, 522 (Fla.1996). And, of course, the settlement of cases serves the dual and valuable purposes of reducing the strain on scarce judicial resources and preventing the parties from incurring significant litigation costs. The role of CR 8.01(2) in this process is to provide notice of the damages at stake. Circumvention of this rule reduces the likelihood of case settlement as can be shown by economic analysis.

## ECONOMIC THEORY OF SETTLEMENT

Under the economic theory of suit and settlement, litigants are economically rational beings who make the decision whether to settle or go to trial based on which course of action maximizes their welfare. Richard A. Posner, *Economic Analysis of Law,* 557 (4th ed.1992). According to this theory, litigants compare the value of a settlement with the value of going to trial and select whichever option appears to offer the greater value. George L. Priest & Benjamin Klein, *The Selection of Disputes for Litigation,* 13 J. Legal Stud. 1, 4 (1984). Because the transaction costs of negotiating a settlement generally are much lower than the costs of litigating a case to judgment, the theory predicts that most cases will result in settlement because settlement is mutually beneficial to both parties. *Id.* Settlement will not occur when the least the plaintiff is willing to accept in settlement (the plaintiff's best settlement offer) exceeds the most the defendant is willing to pay in settlement (the defendant's best settlement offer). Posner, *supra,* at 557. In other words, a settlement range between each of these points is a necessary condition to reaching a settlement in a given case. *Id.*

"Each party's best settlement offer [depends] on how he expects to fare in litigation." *Id.* From a plaintiff's point of view, the net expected gain from litigating a case to judgment is: (1) the estimated value of a winning judgment discounted by (2) the plaintiff's probability of winning at trial *minus* (3) the plaintiff's litigation costs. *Id.* From the defendant's point of view, the net expected loss from litigating a case to judgment is: (1) the estimated value of an adverse judgment discounted by (2) the defendant's probability of losing at trial *plus* (3) the defendant's litigation costs. *Id.* For example, if the plaintiff's expected net gain from litigating a case to trial is $10,000, she will not settle for any less. *Id.* If the defendant's net expected loss is $9,000, she will not settle for any more, and settlement will not occur. *Id.* But if those figures are reversed, *i.e.,* the plaintiff's net expected gain is $9,000 and the defendant's net expected loss is $10,000, then there exists a $1,000 settlement range and settlement should occur. The settlement range represents the savings each party can obtain by avoiding litigation and is referred to as the settlement surplus. Thus, the settlement surplus constitutes the economic gain to be achieved through settlement and lies at the heart of the economic theory of suit and settlement.

Granted, the above is a simplistic model of settlement that ignores many factors. But this model is the building block for the more and increasingly complex models of settlement put forth under the economic theory of suit and settlement. Accurate information concerning the amount of

money at stake in the litigation is critical to this and subsequent models. This is because each party's best settlement offer depends directly on the net amount he or she expects to win or lose at trial. CR 8.01(2) provides this information to the defense. Without accurate information, a defendant's best settlement offer almost always will be below the plaintiff's best settlement offer and settlement will not occur. Further, as a practical matter, a defendant will never offer more in settlement than the plaintiff claims in damages. Thus, the chances for settlement will be greatly reduced when the plaintiff distorts the relevant settlement figures by failing to accurately disclose the amount of her claims for unliquidated damages.

There is an additional reason that demonstrates why accurate information concerning the amount of damages at stake increases the likelihood of settlement. Litigation costs include both a fixed and a variable component. Posner, *supra,* at 557. The variable component rises as the amount at stake increases. *Id.* This is because the more one stands to gain or lose, the more one is willing to invest to either achieve the gain or prevent the loss. *Id.* On the other hand, an increase in the stakes should have a much less-pronounced effect on settlement costs. *Id.* That is, it should not cost much more to settle a large case than to settle a small case. *Id.* Thus, an increase in the costs to litigate a case to judgment increases the defendant's net expected loss at trial and reduces the plaintiff's net expected gain from trial. This results in a corresponding increase in the available settlement surplus and each party has more to gain from settlement. Consequently, settlement should be more likely. Therefore, providing timely and accurate information to the defense concerning unliquidated damages increases the possibility of settlement in a given case.

As a practical matter, any supplemental information disclosed to the defense concerning the amount of unliquidated damages results in an increase in the defendant's perception of the stakes at issue in a given case. Further, timely or seasonable disclosure provides this information to the defense at a time when the defendant can make meaningful decisions concerning the allocation of resources—specifically, how much resources to allocate in litigation costs. Thus, accurate and timely disclosure of increased unliquidated damage claims increases the stakes, from the defendant's point of view, at a time when the defendant's decision to litigate or settle will have meaningful economic consequences. In other words, if the supplementary information is provided during trial or on the eve of trial, the defendant will have already committed a great percentage of the total litigation costs, and the defendant will have less to gain by settlement when disclosure is not made timely. On the other hand, when disclosed timely, information that increases the total amount at stake makes litigating the case much more costly relative to settlement, and settlement is more likely to occur.

The above analysis demonstrates that CR 8.01(2) serves an important role in the discovery process and its proper application makes settlement more likely. While this analysis does not address specifically our holding in *Fratzke* that the language of CR 8.01(2) is mandatory and that the trial court had no discretion to disregard application of the rule, *Fratzke,* 12 S.W.3d at 273, further analysis shows why this was the correct result.

■  The disagreement between the majority and dissent in *Fratzke* focused on whether the plaintiff should bear the risk of failing to comply with the rule, or whether the defendant should bear the

risk of not taking affirmative action to ensure that the plaintiff complied with the rule. CR 8.01(2) squarely places this burden on the plaintiff by providing that "the amount claimed *shall not exceed* the last amount stated in answer to interrogatories." *Fratzke* holds that this plain language places a duty on the plaintiff to seasonably supplement her answers to interrogatories. *Id.* But the dissent argued that the burden should be on the defendant to file a motion to compel answers to interrogatories. *Id.* (Lambert, C.J. dissenting) and *id.* at 275 n. 1 (Keller, J. dissenting). Of the two, requiring the defendant to move to compel the plaintiff to "fully answer the interrogatory before utilizing CR 8.01(2) offensively" is the more inefficient rule.

Requiring the defendant to make a motion to compel is burdensome for a number of reasons. It burdens both the court and counsel. It requires drafting the motion, scheduling the motion, and both sides appearing in court to argue the motion. On the other hand, the plaintiff can supplement an interrogatory response by delivering any supplemental answers directly to the defendant. Thus, placing the burden on the plaintiff to supplement her answers avoids the use of judicial resources and does not require either party's counsel to appear in court.

Next, when a plaintiff files a response to interrogatories that her claims for unliquidated damages are X, the defendant cannot know if the plaintiff will make claims for unliquidated damages greater than X at trial. This is because the plaintiff possesses and assesses the information on the amount of her unliquidated damages and reveals this information to the defendant through discovery. Thus, a rational and prudent defendant, who has the burden to compel, will *always* file a motion to compel the plaintiff to file supplemental answers

in order to avoid surprise at trial. In many cases, filing such a motion will be an utter waste of time and resources, because the plaintiff will have no additional claims for unliquidated damages. But if the plaintiff has the burden to supplement her answers, supplementation will only occur when and if a change or revision in damages occurs. Therefore, placing the burden on the defendant to compel supplemental answers ensures that resources will be wasted. But placing the burden on the plaintiff to comply with the rule helps to conserve resources.

Finally, granting the trial court the discretion to allow the plaintiff to avoid the application of the rules will not eliminate these inefficiencies. The rational defendant will spend more in preparing for and trying a case in which she stands to lose hundreds of thousands of dollars than she will for a case in which she stands to lose tens of thousands of dollars. Thus, the rational defendant will not run the risk of relying on the plaintiff's answers to interrogatories in preparing for trial. Rather, the rational defendant will still file a motion to compel supplemental answers in order to ascertain the most accurate information possible. Construing the rule according to its plain meaning is the more efficient rule.

As we noted in *Fratzke*, this does not leave the plaintiff who fails to seasonably supplement her answers without any remedy. *Fratzke*, 12 S.W.3d at 273. The plaintiff can move the trial court for leave to supplement her answers. This places the burden on the plaintiff to show that the *increase* in the amount of unliquidated damages claimed does not prejudice the defendant. Economics aside, this is more equitable than placing the burden on the defendant to show that permitting the plaintiff to escape application of the plain

language of the rule, is prejudicial to the defense.

The purpose of the rule is to put a party on notice as to the amount of unliquidated damages at stake to allow that party to make economically rational decisions concerning trial preparation and trial strategy. Its purpose is not to put a party on notice as to the type of damages at stake. Consequently, once Shoney's was finally apprised of the amount of unliquidated damages, it first moved to limit the damages to those damages of which it had proper notice. After that motion was denied, Shoney's then moved for a continuance in order to properly prepare for trial in light of a substantial and material change in the amount of money it stood to lose. In denying both of these motions, the trial court allowed LaFleur to circumvent the rules to ambush the defense. Far from exploding a land mine with this decision, we are upholding the principle and ideal that the legal playing field should be level; that the very rules by which the trial is to be conducted must be applied impartially and equally to both plaintiff and defendant, to both rich and poor.

For the reasons set forth above, we affirm the Court of Appeals.

COOPER, STUMBO, and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., dissents by separate opinion, with GRAVES and KELLER, JJ., joining that dissent.

KELLER, J., dissents by separate opinion, with LAMBERT, C.J., and GRAVES, J., joining that dissent.

LAMBERT, Chief Justice, dissenting.

One of the buried land mines I predicted in *Fratzke v. Murphy*[1] exploded in this case. As in *Fratzke*, plaintiff's counsel did not timely supplement answers to interrogatories disclosing the amount of pain and suffering damages claimed and disclosing the amount of medical expense reimbursement sought. Opposing counsel sought no relief nor otherwise brought the omission to the attention of plaintiff's counsel until the day of trial when an order was sought prohibiting submission of these damage claims to the jury.

The trial court overruled the motion *in limine* and likewise denied Shoney's motion for a continuance. The trial court discerned no prejudice to the defendant and the case proceeded to trial and resulted in a verdict for $75,000 for pain and suffering and $14,823.00 for medical expenses (to be reduced by 20%). The majority has now held that the trial court abused its discretion.

While I disagreed with the result in *Fratzke v. Murphy*, at least the facts there more nearly justified the result than do the facts in this case. In *Fratzke*, the interrogatories were not supplemented until the last day of trial, while in this case the supplemental answers to interrogatories were submitted prior to the commencement of trial. I see no reason for this Court to usurp the discretion of the trial court in its handling of this discovery motion. Our draconian application of CR 8.01 has resulted in injustice, and harmed the judicial process by disturbing the relationship between appellate courts and trial courts.

The majority has written at length on "economic theory of settlement." Its thesis is that a defendant cannot rationally determine whether to settle or go to trial without knowing its maximum economic exposure. By that view, the burden would

---

1. Ky., 12 S.W.3d 269 (2000).

logically fall on the defendant to move to obtain the information it needs to make its settlement decision. In this case however, Defendant never made a motion to compel the Plaintiff to supplement the interrogatories. In fact, the Defendant waited until the day of trial to move to exclude evidence of the damage claims.

*Burns v. Level*[2] applied the abuse of discretion standard to a trial court's discovery ruling. In *Burns,* this Court held that the trial court had not abused its discretion when it granted a directed verdict for the defendant, dismissing plaintiff's claims for damages not specified in the interrogatories as requested. In *Fratzke,* I expressed the view that "a far better approach would be to leave the remedy for failure to answer interrogatories to the sound discretion of the trial judge. The perspective of the trial judge with respect to analyzing prejudice, unfair surprise, and generally allocating responsibility is far superior to that of any appellate court."[3] On an issue such as this, we should not substitute our judgment for that of the trial court. A trial judge is in the best position to assess prejudice. If the trial judge finds that there is no harm to the opposing party due to the omission, the trial judge should be allowed to admit the evidence on the damage claim.

GRAVES and KELLER, JJ., join this dissenting opinion.

KELLER, Justice, dissenting.

Without any hesitation, I join Chief Justice Lambert's dissent. I write separately merely to note my observation that the remedy the majority approves for Appel-

lant's violation of CR 8.01—reversal of the jury's verdict and remand to the trial court for entry of a judgment for only those items of damages included in earlier answers to interrogatories—actually sanctions "trial by ambush" and creates significant externalities likely to disrupt the "Economic Theory of Settlement." I cannot fathom how an interpretation of our Rules of Civil Procedure that discourages proactive efforts by defendants to seek information relating to damage exposure could possibly *foster* settlements. After all, why would any defendant have an incentive to settle when he or she can wait until the day of trial and then—without any previous complaint or showing of prejudice—exploit opposing counsel's oversights and invoke hypertechnical constructions of the rules to keep a plaintiff from recovering his or her damages?

Here, after the trial court denied Appellee's motion in limine to prohibit the Appellant from introducing evidence showing damages in excess of the damages claimed in the interrogatory responses, Appellee asked the trial court to continue the trial in order to give it an opportunity to prepare for evidence concerning these additional elements of damages. While the majority chooses a remedy that leads to a harsh result, it could easily remedy any prejudice it believes Appellee's tardy notice may have caused by holding that the trial court erred when it denied Appellee's motion to continue the trial, reversing the judgment, remanding the claim for a new trial, and assessing the costs thereof against Appellant. Notwithstanding the majority's notions of economic theory, "there are no good economies in an unjust law,"[1] and, above all else, this Court is

---

**2.** Ky., 957 S.W.2d 218 (1997).

**3.** *Fratzke,* 12 S.W.3d at 274.

**1.** *Hilen v. Hays,* Ky., 673 S.W.2d 713, 718 (1984).

charged with the duty to do justice.[2] The majority has failed to do so in this case.

LAMBERT, C.J. and GRAVES, J., join this dissenting opinion.

---

**2.** *Id.* ("Above all else, court-made law must be just.").