James B. TENNILL, Sr.,
Appellant/Cross–
Appellee,

v.

Cyrus M. TALAI, Appellee/Cross–
Appellant.

Nos. 2007–SC–000046–DG,
2007–SC–000673–DG.

Supreme Court of Kentucky.

Feb. 19, 2009.

Leroy E. Sitlinger, Jr., Sitlinger, McGlincy, Steiner, Theiler & Karem, Louisville, KY, Counsel for Appellant/Cross–Appellee.

David Alfred Shearer, Jr., David Wells Zahniser, James Middleton Cawood, III, Freund, Freeze & Arnold, Cincinnati, OH, Counsel for Appellee/Cross–Appellant.

Opinion of the Court by Justice SCHRODER.

The Appellant/Cross–Appellee, James B. Tennill, Sr., received a default judgment against the Appellee/Cross–Appellant, Cyrus M. Talai, for personal injuries received from a motor vehicle accident. The trial court denied Talai's motion to set aside the default and scheduled a hearing on damages. Prior to the hearing on damages, Talai propounded written interrogatories to Tennill to determine Tennill's injuries and damages. At the same time, Talai

also scheduled Tennill's deposition for November 8, 2004.

Tennill's deposition was taken on November 8, 2004. During said deposition, Talai's attorney stated: [1]

All right, sir. There's been absolutely no discovery taken in this case. I don't have medical records. I don't have any written discovery responses back from you. I'm simply taking your client's deposition so that I can discover what the *amount of damages* are and if that's the case, that—that'll be tendered, (emphasis added).

Tennill was then deposed at length about the accident, his injuries, his medical treatments, prior medical history, past accident problems, and the like. Tennill was also questioned about compensation received from his insurance carrier, and then specifically asked:

Q. Other than medical expenses, and lost wages, and whatever pain, and suffering is associated with the injuries that you sustained in this accident, if any, are you making any other claims in this lawsuit?

A. Nope.

After answering, "Nope," Tennill was questioned extensively about the extent of property damage to his vehicle and details about the accident. At no time was Tennill asked to further itemize any damages.

The trial court held the hearing on damages and Tennill, over Talai's objection, was allowed to introduce evidence of unliquidated damages. The objection contended that Tennill should not be allowed to introduce evidence of unliquidated damages because Tennill had failed to respond or object to the written interrogatories. The trial court ruled that because Talai was in default, he was not entitled to a response to the interrogatories. The trial

---

1. On page 28 of said deposition, in response    to an objection to questions on causation.

court heard evidence on damages and awarded Tennill $45,076.00 plus costs, etc.

The Court of Appeals affirmed the trial court's decision to not set aside the default, but reversed the damage award based on CR 8.01(2); Fratzke;[2] and LaFleur.[3] Tennill requested discretionary review and Talai filed a protective cross motion. We granted both requests for discretionary review and consolidated the same.

■ The first issue is whether the trial court erred in not setting aside the default judgment. We agree with the Court of Appeals that there was no error or abuse of discretion by the trial court in not setting aside the default. CR 55.02 allows a trial court to set aside a default if good cause is shown. Good cause is not mere inattention on the part of the defendant (Appellee/Cross–Appellant), his attorney, or his insurance carrier. See Howard v. Fountain,[4] Here, Tennill kept the insurance carrier and Talai informed of the claim and even provided a courtesy copy of the complaint to the defending insurance carrier. A courtesy copy of the motion for default judgment was sent to both the insurance carrier and Talai. The subsequent motion to set aside the default attached a tendered answer with a general denial, but no meritorious defense. Under these circumstances, the trial court did not abuse its discretion in not setting aside the default. See also Green Seed Co., Inc. v. Harrison Tobacco Storage Warehouse, Inc.[5]

■ Tennill's failure to object or respond to Talai's written interrogatories on the damages claimed is of greater concern than the default issue. Talai made a timely request for discovery through written interrogatories and Tennill failed to object or respond. Both Tennill and the trial court were of the opinion that a defaulting party was not entitled to discovery. The Court of Appeals disagreed, citing Howard[6] for the proposition that a defaulting party admits liability, but not unliquidated damages. Therefore, Talai was entitled to discovery. Consequently, Tennill's failure to respond to the written interrogatories violated the strict standard written in CR 8.01(2). Under Fratzke,[7] Tennill's failure to specify or answer as to specific amounts of unliquidated damages sought in response to a written interrogatory amounts to an effective answer that his claim for unliquidated damages was zero.[8]

■ We agree with the Fratzke Court that CR 8.01(2) is to be strictly construed so as to put the burden on the claimant to submit the amount of unliquidated damages in answers to written interrogatories because "the purpose of the rule is to allow a party to discover the amount an opposing party is seeking for unliquidated damage claims."[9] LaFleur was a follow up to Fratzke, dealing with a failure to supplement the answers to interrogatories, with the same result.[10] LaFleur held that un-

2. Fratzke v. Murphy, 12 S.W.3d 269 (Ky. 1999).

3. LaFleur v. Shoney's, Inc., 83 S.W.3d 474 (Ky.2002).

4. 749 S.W.2d 690, 692 (Ky.App.1988).

5. 663 S.W.2d 755, 757 (Ky.App.1984) (requiring good cause and a meritorious defense before a default can be set aside).

6. 749 S.W.2d at 693.

7. 12 S.W.3d at 271.

8. See also LaFleur, 83 S.W.3d at 474 (extending Fratzke to the failure to supplement interrogatories and additional unliquidated damages).

9. 12 S.W.3d at 273 (emphasis in original).

10. 83 S.W.3d at 474.

der CR 8.01(2), the additional amounts of unliquidated damages could not be recovered because "[t]he purpose of the rule is to put a party on notice as to the *amount* of unliquidated damages at stake." [11] *Fratzke*[12] recognized that a trial court can authorize answers or supplemental answers to interrogatories for good cause, as late as during the trial itself. However, there was no such request to the trial court in either *Fratzke*[13] or *LaFleur.*[14] Because the purpose of CR 8.01(2) is to give the opposing parties notice of the *amount* of the claim, *Fratzke* held that the failure to answer the interrogatories on the amount of unliquidated damages was *not* harmless.[15] However in the case sub judice, after requesting discovery through written interrogatories, the opposing party scheduled the injured party's deposition for discovery of the "amount of damages" and the nature of the claims, other than medical expenses, lost wages, pain and suffering. Tennill appeared at the deposition and answered all of Talai's questions. Before and after the deposition, Tennill's attorney informed Talai's insurance carrier or his attorney that he was looking for policy limits of $25,000.00 if settled before trial. At no time did Talai's attorney seek a further explanation or investigation of the amount of damages. Under this set of circumstances, we opine, that unlike in *Fratzke*, the error here in not providing written answers to the interrogatories, was harmless in that Talai's counsel waived strict compliance with CR 8.01(2) when he scheduled a deposition on damages and failed to ask the questions. Therefore, we must reverse the Court of Appeals' opinion as to damages and reinstate the trial court's judgment, albeit on other grounds.

Accordingly, the decision of the Court of Appeals is affirmed in part and reversed in part.

All sitting. All concur.

11. 83 S.W.3d at 481 (emphasis added).

12. 12 S.W.3d at 272.

13. *Id.* at 273.

14. 83 S.W.3d at 477.

15. 12 S.W.3d at 273.