RENDERED: JULY 1, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0919-MR

D.W. WILBURN, INC. APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE LUCY A. VANMETER, JUDGE
ACTION NO. 10-CI-05707

H&H PAINTING, LLC APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, JONES, AND McNEILL, JUDGES.

JONES, JUDGE: D.W. Wilburn, Inc. ("Wilburn"), a general contractor, appeals

an opinion and order of the Fayette Circuit Court which awarded damages in a

bench trial to Wilburn's former subcontractor, H&H Painting, LLC ("H&H").

After a thorough review of the record and the law, we affirm.

# I. BACKGROUND

This dispute has a lengthy background and procedural history, and this is the third time the matter has been appealed to this Court. From approximately 2005 until 2010, H&H contracted with Wilburn to provide commercial painting services on several projects for which Wilburn served as the general contractor. Relevant to the current dispute, H&H provided painting services for three Wilburn projects: Leestown Middle School ("Leestown"), Morehead State University Center for Health, Education, and Research ("Morehead"), and the Caudill Middle School ("Caudill"). At some point in 2009, the working relationship between H&H and Wilburn became contentious. H&H stopped its work on the Leestown and Morehead projects on March 5, 2010, allegedly because Wilburn had not paid for the work it performed. *Hoover v. D.W. Wilburn, Inc.* ("*Wilburn I*"), Nos. 2013-CA-000835-MR, 2013-CA-000884-MR, 2014 WL 5064459, at *1 (Ky. App. Oct. 10, 2014), *as modified* (Jan. 9, 2015).

H&H subsequently filed suit against Wilburn in Fayette Circuit Court, asserting breach of contract, intentional infliction of emotional distress, intentional interference with a contractual relationship, and restraint of trade pursuant to KRS[1] 367.175. *Wilburn I*, 2014 WL 5064459, at *1. When the matter went to trial in January 2013, the trial court granted a directed verdict to Wilburn on all counts of

---

[1] Kentucky Revised Statutes.

the complaint except for the breach of contract claim. *Id*. After finding that H&H had substantially performed on two of the three contracts, the jury returned a verdict in H&H's favor regarding the Morehead and Leestown projects, awarding $83,086.00 and $38,800.00 on each project respectively. *Id*. The jury declined to award damages on the Caudill project after it determined that neither party substantially performed its duties. (Record ("R.") at 576, 581.)

After the jury's verdict, Wilburn moved the trial court for judgment notwithstanding the verdict, asserting H&H had failed to submit sufficient proof of its damages. The trial court granted the motion and set aside the jury's verdict. *Wilburn I*, 2014 WL 5064459, at *1. In the first appeal, we held that the trial court erred when it vacated the verdict *in toto* where the jury found that the contract was breached, and that instead of disallowing all the damages, the trial court should have held a new trial to determine the amount of damages owed to H&H. *Id*. at *7.

Upon remand, the trial court conducted a second jury trial on December 18-19, 2017. Only two witnesses testified: James Hoover, one of the members of H&H, and Kimberly Blethen, an accountant employed by Wilburn. At the conclusion of the trial, the jury determined that H&H was entitled to no damages, and the trial court entered its judgment to that effect. Unfortunately, the trial court had "erroneously instructed the jury to determine whether H&H was entitled to damages." *H&H Painting, LLC v. D.W. Wilburn, Inc.* ("*Wilburn II*"),

No. 2018-CA-000283-MR, 2019 WL 2070458, at *2 (Ky. App. May 10, 2019).

Upon appeal, we held the instruction violated the law-of-the-case doctrine, as the

issue of whether H&H was entitled to damages had already been determined at

trial and upheld in the first appeal. *Id.* We reversed and remanded for a new trial,

again specifying that the trial should be upon the sole issue of the amount of

damages owed to H&H "for its work on the Leestown and Morehead projects." *Id.*

at *3.

By the time the case returned to the trial court for its third attempt at a

resolution, the judicial landscape had shifted. The former presiding judge had

retired, and the case now fell to Judge Lucy A. VanMeter. In its pretrial order

entered on February 13, 2020, the trial court ordered the parties to submit

simultaneous memoranda addressing the following items:

    a. Plaintiff shall set forth the claims to be tried, an itemization of damages and set forth its theory of liability;

    b. Defendant shall set forth its theory of the defense;

    c. Each party shall identify the witnesses they intend to call at the trial of the case;

    d. Each party shall set out any issues of law or evidence to be addressed by the Court prior to trial;

    e. Each party shall tender proposed jury instructions;

    f. Each party shall state whether they consent to a bench trial or wish to have the case tried by a jury;

g.  Any other matters affecting the trial of the case[.]

(R. at 1083.)  The trial court also directed each party to submit a response to the opposing party's memorandum.  In its memorandum, H&H asserted it was owed $97,758.89 for its work on the Morehead project, and $32,780.00 for the Leestown project.  (R. at 1085.)  For proof of these damages, H&H attached copies of pay requests it had submitted to Wilburn.  (*Id*.)  H&H also asserted that these damages were liquidated; therefore, it was entitled to both prejudgment and postjudgment interest from a date of the trial court's discretion.  (R. at 1085, 1092-95.)

In the context of the matter currently before this Court, Wilburn's memorandum and response warrant our special attention.  Wilburn's memorandum stated, "H&H has yet to prove its damages resulting from the breach.  That is the nature of Wilburn's defense."  (R. at 1155.)  The Wilburn memorandum further explained that the nature of its proof was to show that Wilburn "introduced proof as to what Wilburn was required to spend to complete H&H's work, not for the purpose of attempting to recover any part of those expenditures, but instead to prove that H&H was not as far along as it contended."  (*Id*.)  Additionally, the Wilburn memorandum asserted that it could identify "no other legal issues other than a ruling on Wilburn's entitlement to setoff any overpayments made to H&H on the Caudill project."  (R. at 1156.)  In its response to H&H's memorandum, Wilburn contended H&H had not, thus far, proven it was entitled to any damages,

and so these damages could not be liquidated. (R. at 1162.) Wilburn then reiterated its argument that the costs to complete the projects were not submitted as a set-off, but rather to show that H&H had not completed as much work as it claimed. (R. at 1163.) Wilburn again definitively stated that "it should be entitled to a setoff for the amounts overpaid on Caudill. This is the only setoff claim Wilburn has made." (*Id.*)

Following submission of the memoranda and responses, the parties agreed to a bench trial wherein the trial court would render judgment based on the evidence and testimony presented during the December 2017 jury trial. On May 8, 2020, the trial court issued its findings of fact, conclusions of law, and judgment. (R. at 1287.) The trial court noted the extensive history of the case and confined itself to considering only the amounts H&H should be compensated for Wilburn's breach of the Leestown and Morehead contracts. (R. at 1289.) Of the two witnesses presented during the trial, the trial court specifically noted that Mr. Hoover was present at the job sites and was able to testify from personal knowledge about the amount of labor and materials H&H provided, the weekly payroll and pay requests he sent to Wilburn, and the percentage of work H&H completed. In contrast, Ms. Blethen admitted she was not at the job sites, had no knowledge regarding the percentage of work H&H completed, and had no direct knowledge regarding the quality of H&H's work. (R. at 1290.)

Ultimately, the trial court concluded "the best evidence of the work completed by H&H is documented in the pay requests contemporaneously submitted by H&H." (R. at 1293.) Using these records, as well as testimony from Mr. Hoover regarding typical weekly payroll, the trial court undertook a *quantum meruit* analysis of the value of H&H's labor. For the Leestown project, the trial court calculated that the claimed value of work through February 17, 2010, was $32,600.00. Using Mr. Hoover's testimony regarding the value of his average payroll on the Leestown project, the trial court calculated that the value of labor for the two weeks H&H worked between February 17 and March 5, 2010, for which no pay requests had been submitted, was $8,990.40. The trial court added these amounts together and subtracted the amounts already paid by Wilburn for labor and concluded Wilburn owed H&H for $19,090.40 for the Leestown project. (R. at 1292-93.) Using the same methodology, the trial court concluded Wilburn owed H&H $97,758.89 for the Morehead project. (R. at 1293-95.) The court also ordered Wilburn to pay H&H prejudgment interest on these amounts at eight percent, compounded annually from March 5, 2010, as well as postjudgment interest of six percent. (R. at 1297.)

Wilburn subsequently moved the court to alter, amend, or vacate the judgment pursuant to CR[2] 59.05. Wilburn contended the trial court erroneously

---

[2] Kentucky Rules of Civil Procedure.

gave weight to the bills submitted by H&H without proof of the amount of work which was completed at the time H&H left the job. (R. at 1299.) Wilburn also argued that the costs to complete the painting work after H&H's departure should be construed as proof that H&H did not perform the work it claimed it did while it was on the job. Wilburn also argued that H&H's contract obliged H&H to pay for materials, specifically paint, and that the trial court did not account for the amounts paid for paint by Wilburn and subsequent subcontractors in its award to H&H. (R. at 1299, 1302.) Finally, Wilburn argued the amount claimed by H&H and awarded by the trial court on the Morehead project exceeded that which H&H claimed it was due in its answers to interrogatories; therefore, the award must be reduced to the amount stated in H&H's last answer pursuant to CR 8.01(2) and *Fratzke v. Murphy*, 12 S.W.3d 269 (Ky. 1999).

The trial court subsequently conducted a hearing on Wilburn's motion to alter, amend, or vacate. After hearing arguments, the trial court found that Mr. Hoover provided the only testimony regarding the amount of work H&H completed on the projects. Ms. Blethen was not on the job sites, and so her testimony as to the quantity of work completed or its quality was speculative. Furthermore, the trial court did not deduct for the value of paint because the damages granted to H&H were based on the value of its labor, as evidenced by Mr. Hoover's pay requests. Finally, the trial court took the *Fratzke* issue under

advisement because it wished to consider whether the law of the case would prevent Wilburn from making the argument; the trial court believed Wilburn should have filed cross-appeals arguing *Fratzke* in previous proceedings. On June 22, 2020, the trial court entered a written order denying Wilburn's motion, part of which specifically concluded "the *Fratzke* argument is waived and/or barred by the law of the case doctrine." This appeal followed.

## II. ANALYSIS

Before considering the substance of the arguments on appeal, we must first begin by discussing the preservation statements in the appellant's brief. H&H contends Wilburn's brief fails to give proper preservation statements in compliance with CR 76.12. As an extension of this argument, H&H also argues that Wilburn, despite the assertions made in its preservation statements, failed to properly preserve several of its arguments on appeal. "Compliance with CR 76.12 is mandatory." *Smothers v. Baptist Hospital East*, 468 S.W.3d 878, 881 (Ky. App. 2015). CR 76.12(4)(c)(v) requires that each argument in the appellant's brief "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." The purpose of this rule is to ensure "that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration." *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky.

App. 2012). "An appellate court is without authority to review issues not raised in or decided by the trial court." *Fischer v. Fischer*, 197 S.W.3d 98, 102 (Ky. 2006) (internal quotation marks and citations omitted).

In the matter before us, Wilburn has presented the same, generic preservation statement for each of its five arguments on appeal. This preservation statement reads as follows: "Wilburn preserved this issue for appellate review pursuant to CR 76.12(4)(c)(v) by raising it before the trial court in its pretrial compliance (R. at 1155-64) as well as in its Motion to Alter, Amend of [*sic*] Vacate. R. at 1298-1305 [*sic*]." Upon examination of Wilburn's pretrial compliance, it is immediately apparent that several of the specific issues which Wilburn now argues on appeal are not present in that document.

In addition, referencing a motion to alter, amend, or vacate in support of proper preservation, as Wilburn does here, is problematic because "a party cannot invoke CR 59.05 to raise arguments and to introduce evidence that should have been presented during the proceedings before the entry of judgment." *Rumpel v. Rumpel*, 438 S.W.3d 354, 365-66 (Ky. 2014) (internal quotation marks and citations omitted). We will not consider any arguments which were only raised in an appellant's CR 59.05 motion; *see Ford v. Ford*, 578 S.W.3d 356, 366 (Ky. App. 2019). Although H&H asks that we strike Wilburn's brief or the offending portions thereof, pursuant to *Petrie v. Brackett*, 590 S.W.3d 830, 835

-10-

(Ky. App. 2019), we decline to do so. Instead, we will consider each of Wilburn's arguments to the extent it is preserved and review otherwise unpreserved issues, at least those which do not solely appear in Wilburn's CR 59.05 motion, "for manifest injustice only." *Id*.; *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021) (citations omitted).

The standard of review for a bench trial is as follows: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment . . . . Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01; *see also Moore v. Asente*, 110 S.W.3d 336, 353-54 (Ky. 2003). Factual findings are not clearly erroneous if supported by substantial evidence. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998). "Substantial evidence has been conclusively defined by Kentucky courts as that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Natural Res. and Env't Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994) (citations omitted).

Wilburn presents five arguments on appeal. First, it argues H&H failed to present evidence upon which its damages could be determined with

reasonable certainty.  Second, Wilburn argues the trial court should not have awarded damages related to payroll.  Third, Wilburn argues the trial court erroneously failed to deduct the costs of materials, specifically paint, from H&H's award.  Fourth, Wilburn argues the trial court's award of damages exceeded the amounts H&H claimed in its responses to interrogatories, violating CR 8.01(2) and *Fratzke*, *supra*.  Fifth, and finally, Wilburn argues the trial court abused its discretion when it awarded H&H prejudgment interest.  We will consider each argument in turn.

Because Wilburn's first two arguments are similar attacks on the sufficiency of the evidence, we will consider them together.  We begin by acknowledging these arguments are considered preserved for our review.  "In actions tried by the court without a jury, the sufficiency of evidence to support the findings of fact may be raised on appeal without regard to whether there was an objection to such findings or whether there was a post-judgment motion." *Eiland v. Ferrell*, 937 S.W.2d 713, 715 (Ky. 1997) (citing CR 52.03).  In its first argument, Wilburn contends H&H failed to present evidence upon which damages could be determined with reasonable certainty.  Specifically, Wilburn argues the pay requests used by the trial court to calculate the value of H&H's performance were "guess work and speculation" as they "were admitted to be Mr. Hoover's estimates and routinely were overstated as reflected by the fact that the architects

-12-

routinely adjusted them down to reflect the actual work performed." (Appellant's Brief at 8.) For its second argument, Wilburn asserts the trial court should not have awarded damages for the two weeks of estimated payroll between the last pay requests and when H&H ceased work on March 5, 2010. Wilburn argues H&H was to be paid a fixed price based on the contract, and so the payroll estimate was not relevant. Further, Wilburn argues "Mr. Hoover's testimony was not sufficiently reliable or detailed" to permit the trial court to calculate damages. (Appellant's Brief at 9.)

Firstly, despite Wilburn's assertions to the contrary, the perceived uncertainty of the amounts on the pay requests will not operate to thwart an award of damages to H&H. "If it is established with reasonable certainty that damage has resulted from a breach of duty or a wrongful act of defendant, mere uncertainty as to the amount will not preclude recovery." *Roadway Exp., Inc. v. Don Stohlman & Associates, Inc.*, 436 S.W.2d 63, 65 (Ky. 1968). Here, it is the law of the case that Wilburn breached its contracts with H&H as to the Leestown and Morehead projects. The trial court sifted through a voluminous record and concluded that the best evidence of the value of H&H's labor was found in the contemporaneous pay requests submitted by Mr. Hoover, and this evidence was supported by Mr. Hoover's testimony at trial. It is also worth noting, as the trial court did, that Mr. Hoover's trial testimony was the *only* testimony directly relating to the value of

H&H's performance on these contracts. Despite any speculative adjustment which an architect may have imposed upon them, these pay requests, considered in conjunction with Mr. Hoover's testimony, constitute substantial evidence supporting the trial court's award of damages.

Secondly, it is uncontroverted that H&H performed work on Wilburn's projects between the last submitted pay request and March 5, 2010, when it left the job sites. Wilburn argues the estimated weekly pay was not relevant because the contract had a fixed price for H&H's labor. However, because Wilburn breached its contracts, the trial court was permitted to calculate the value of damages based on a *quantum meruit* analysis, and Wilburn itself even quotes this point of law in another portion of its brief: "When one party breaches a contract, 'the other may by election rescind and *recover the value of any performance rendered*, or stand by the contract and recover damages sustained by its breach as if he had performed.'" (Appellant's Brief at 7) (emphasis added) (quoting *Columbian Fuel Corp. v. Skidmore*, 308 Ky. 447, 453, 214 S.W.2d 761, 765 (1948)).

Ultimately, we will not second-guess the trial court's decision to credit Mr. Hoover's testimony. "It has long been held that the trier of fact has the right to believe the evidence presented by one litigant in preference to another[]" and "[t]he trier of fact may believe any witness in whole or in part."

-14-

*Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996) (citations omitted). Given the great deference we afford the trial court's findings under CR 52.01, particularly with regard to the credibility of witnesses, we cannot say the trial court clearly erred in using documented pay requests and payroll estimates elicited through Mr. Hoover's testimony to generate an award for H&H.

In its third argument on appeal, Wilburn argues the trial court erroneously failed to deduct the costs of paint from H&H's award. To the best of our ability to determine, Wilburn did not present this argument to the trial court until Wilburn's CR 59.05 motion to alter, amend, or vacate the judgment. As mentioned previously, "[a] party cannot invoke CR 59.05 to raise arguments . . . that should have been presented during the proceedings before the entry of the judgment." *Wayne County Hospital, Inc. v. WellCare Health Insurance Company of Kentucky, Inc.*, 576 S.W.3d 161, 165 (Ky. App. 2018). Indeed, both of Wilburn's pretrial documents, its memorandum and its response to H&H, explicitly disclaim *any* form of set-off other than the amounts purportedly overpaid on the Caudill contract – an argument which Wilburn has abandoned on appeal. Accordingly, we need not consider this argument further; *see Ford*, 578 S.W.3d at 366. However, even if we were to consider this argument on its merits, we discern no manifest injustice in the trial court's method. The amounts awarded to H&H

were based on the trial court's calculation of the value of its labor, not the amounts allotted to H&H to purchase paint or other materials under the contract.

For its fourth argument, Wilburn contends the trial court erroneously awarded damages which exceeded the amount claimed for damages in H&H's last response to interrogatories, thus violating CR 8.01(2) and *Fratzke*, 12 S.W.3d 269. CR 8.01(2), in pertinent part, states the following:

> When a claim is made against a party for unliquidated damages, that party may obtain information as to the amount claimed by interrogatories. If this is done, the amount claimed shall not exceed the last amount stated in answer to interrogatories; provided, however, that the trial court has discretion to allow a supplement to the answer to interrogatories at any time where there has been no prejudice to the defendant.

*Fratzke* held "that CR 8.01(2) is to be strictly construed so as to put the burden on the claimant . . . because 'the purpose of the rule is to allow a party to discover the *amount* an opposing party is seeking for unliquidated damage claims.'" *Tennill v. Talai*, 277 S.W.3d 248, 250 (Ky. 2009) (quoting *Fratzke*, 12 S.W.3d at 273) (emphasis in original). However, a claimant's strict compliance with CR 8.01(2) pursuant to the holding in *Fratzke* may be waived by the conduct of the opposing party. *Id*. at 251.

The trial court determined that Wilburn's *Fratzke* argument was "waived and/or barred by the law of the case doctrine" because Wilburn did not preserve the *Fratzke* issue by means of a protective cross-appeal in either of the

two previous appeals to this Court. H&H's last response to interrogatories stated Wilburn owed $30,500.00 for the contract claim on the Morehead project, and this trial court awarded $97,758.89. (R. at 58, 1293-95.) However, the jury in the first trial was not limited by instructions incorporating *Fratzke* when it awarded H&H $83,086.00, and Wilburn did not appeal this violation of *Fratzke* after the trial court granted Wilburn judgment notwithstanding the verdict. During the second trial, Wilburn asked the trial court about *Fratzke* during a bench conference on the instructions. The trial court ruled that the damages should be based on the testimony presented to the jury, and the $30,500.00 figure was not presented to the jury. Wilburn countered by asserting the *Fratzke* issue was one for the court, not the jury. However, when it received a favorable verdict, Wilburn once again did not cross-appeal the *Fratzke* issue to this Court.

When faced with this history, the present trial court ruled that Wilburn's lack of previous action to enforce *Fratzke* barred its application here. In coming to this conclusion, the trial court relied heavily on *Brown v. Commonwealth*, 313 S.W.3d 577 (Ky. 2010), and quoted significant portions of that opinion in its order denying Wilburn's CR 59.05 motion:

> "Law of the case" refers to a handful of related rules giving substance to the general principle that a court addressing later phases of a lawsuit should not reopen questions decided by that court or by a higher court during earlier phases of the litigation.

. . . .

> Although in general the law-of-the-case doctrine applies only to matters the merits of which an appellate court has decided, an extension of the core law-of-the-case doctrine is the rule that precludes an appellate court from reviewing not just prior appellate rulings, but decisions of the trial court which could have been but were not challenged in a prior appeal. . . . [T]his Court held that an appellate court "has no power on a second appeal to correct an error in the original judgment which either was, or might have been relied upon in the first appeal." . . . Unlike the core law-of-the-case doctrine, however, this extension barring issues not raised in a prior appeal is more accurately understood as a type of waiver. This is so because the extension hinges not on a previous appellate decision on the barred issue establishing the law of the case, but instead on the party's inaction in failing to raise the issue in a manner consistent with the court's general policy against piecemeal appeals.

313 S.W.3d at 610-11 (citations omitted). The trial court reasoned that Wilburn had "twice failed to appeal the trial court's failure to enforce the rule of *Fratzke*." (R. at 1353.)

We discern no error in the trial court's reasoning. In two previous trials, Wilburn apparently acquiesced when the trial court allowed the jury to consider damages beyond the limits of what *Fratzke* would allow. Wilburn then repeatedly declined to argue *Fratzke* in its previous appeals, only to finally assert it in a post-judgment motion in the third trial and in this appeal. This pattern runs

counter to the "court's general policy against piecemeal appeals." *Brown*, 313 S.W.3d at 610-11.

Furthermore, and as an independent rationale to affirm, this issue was not properly preserved.[3] "By definition, an assignment of error cannot be regarded as 'preserved' if its significance was never brought to the trial judge's attention." *Smith v. Commonwealth*, 410 S.W.3d 160, 167 (Ky. 2013). Wilburn failed to bring its *Fratzke* argument to the attention of the trial court prior to entry of the judgment – despite the trial court's pretrial order requiring the parties to "set out any issues of law or evidence to be addressed by the Court prior to trial[.]" (R. at 1083.) Wilburn does not mention *Fratzke* or CR 8.01(2) in its pretrial memorandum, and it only obliquely references the relevant facts, as part of the history of this case, in its response to H&H.[4] It was only after the trial court rendered its judgment that Wilburn argued *Fratzke* as part of its CR 59.05 motion. As discussed previously, new arguments may not be presented in a CR 59.05 motion. *Wayne County Hospital, Inc.*, 576 S.W.3d at 165. Thus, we cannot say the trial court erred or committed a manifest injustice when it determined Wilburn waived its arguments under *Fratzke* and CR 8.01(2).

---

[3] "[I]t is well-settled that an appellate court may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009).

[4] Wilburn mentions "[t]he jury awarded H&H $83,086.00 for the [Morehead] project[]" in the first trial, and "[i]n response to Interrogatory No. 4, H&H said it sought $30,500.00 for their contract on the [Morehead] project." (R. at 1161.) However, Wilburn does not follow through on these facts to actually argue for a limitation on damages pursuant to *Fratzke* or CR 8.01(2).

For its fifth and final issue on appeal, Wilburn contends the trial court erroneously awarded prejudgment interest for the unliquidated damages awarded to H&H. Wilburn argued against prejudgment interest in its response to H&H's pretrial memorandum, so we will consider this argument as preserved. Citing *Nucor Corporation v. General Electric Company*, 812 S.W.2d 136 (Ky. 1991), for the proposition that prejudgment interest is a matter of equity, the trial court concluded that the amount Wilburn owed H&H was "sufficiently definite such that Wilburn had reason to know the approximate amount owed . . . through March 5, 2010." (R. at 1297.) Furthermore, the trial court concluded that prejudgment interest was required as a matter of justice because "[i]t has been a decade since H&H completed its painting work" and "[d]uring that time, H&H has endured two jury trial[s] and two trips to the Court of Appeals." (R. at 1297.) The trial court then awarded prejudgment interest from March 5, 2010.

Wilburn now argues the trial court abused its discretion when it awarded the prejudgment interest. Specifically, Wilburn argues the "as justice requires" aspect of the trial court's order "presumes [the] fault of the appellant." (Appellant's Brief at 15.) Wilburn contends there was a reasonable dispute as to whether H&H was at fault when it walked off the job on March 5, 2010, and the question of whether H&H was owed anything was likewise reasonably disputed. Wilburn also asserts that the trial court was incorrect when it referred to the

amounts owed as "sufficiently definite," arguing that H&H's proof of damages was so uncertain that this Court called them "incomplete, contradictory and confusing" in *Wilburn I*.

"The longstanding rule in this state is that prejudgment interest is awarded as a matter of right on a liquidated demand, and is a matter within the discretion of the trial court or jury on unliquidated demands." *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005) (citing *Nucor*, 812 S.W.2d at 141). "A damages claim is liquidated if it is 'of such a nature that the amount is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values.'" *Ford Contracting, Inc. v. Kentucky Transp. Cabinet*, 429 S.W.3d 397, 414 (Ky. App. 2014) (quoting *3D Enterprises*, 174 S.W.3d at 450 (citation omitted)).

The trial court considered H&H's damages to be liquidated, writing that they were "sufficiently definite" because Wilburn "had personnel on the jobsite[s] and was on notice of the quantity of painting work performed by H&H. Wilburn was also on notice of the amounts claimed by H&H through the pay requests." (R. at 1296.) We are not as convinced as the trial court that H&H's damages should be considered liquidated. Wilburn was correct in saying that, in

*Wilburn I*, we held the evidence of H&H's damages was confusing and contradictory. Furthermore, the trial court in this matter calculated damages based on the "best evidence" available, *i.e.*, the contemporaneous pay requests submitted by H&H. (R. at 1293.) In short, we do not believe the quality of the evidence and the calculation method are so readily ascertainable as to allow us to view the damages as liquidated.

However, even when damages are unliquidated, the trial court has the discretion to award prejudgment interest as a matter of equity. *Nucor*, 812 S.W.2d at 143. It is clear that the trial court was disturbed by Wilburn's failure to pay H&H what it was owed for painting work more than a decade previously, and that it viewed Wilburn as being on notice for the unpaid amounts in H&H's payroll requests. It is also uncontroverted that H&H worked through March 5, 2010, two weeks from the last submitted payroll requests, and Wilburn avoided paying anything on those amounts until this judgment. An award of prejudgment interest is not punitive; "[r]ather, it is an equitable means of recognizing the economic reality that [Wilburn] has enjoyed a long opportunity to earn interest on the money that it wrongfully withheld[.]" *Reliable Mechanical, Inc. v. Naylor Indus. Services, Inc.*, 125 S.W.3d 856, 858 (Ky. App. 2003). Viewed from this perspective, we cannot say the trial court abused its discretion in awarding prejudgment interest to H&H.

## III. Conclusion

For the foregoing reasons, we affirm the order and judgment of the trial court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David J. Guarnieri
T. Neal Morris
Lexington, Kentucky

BRIEF FOR APPELLEE:

John F. Lackey
Richmond, Kentucky