Karen BURNS and Denver Burns,
her husband, Appellants,

v.

Larry D. LEVEL and Willis Shaw
Frozen Food, Inc., Appellees,

Larry D. LEVEL and Willis Shaw
Frozen Food, Inc., Cross–
Appellants,

v.

Karen BURNS and Denver Burns,
her husband, Cross–Appellees.

Nos. 95–SC–1120–DG, 96–SC–887–DG.

Supreme Court of Kentucky.

Oct. 2, 1997.

As Modified on Denial of Rehearing
Jan. 22, 1998.

James G. Osborne, Edgewood, for Appellants/Cross–Appellees.

Thomas R. Yocum, Cincinnati, for Appellees/Cross–Appellants.

GRAVES, Justice.

Both Appellant/Cross–Appellee, Karen Burns ("Appellant"), and Appellees/Cross–Appellants, Larry D. Level and Willis Shaw Frozen Express, Inc. ("Appellee"), appeal from a decision of the Court of Appeals remanding this personal injury action to the Boone Circuit Court for a new trial. After hearing oral arguments and reviewing the record, we affirm in part and reverse in part the decision of the Court of Appeals.

This action stems from a vehicular accident which occurred on February 5, 1989, at the Mt. Zion overpass on I–75 in Boone County. The parties agreed that freezing rain had rendered the roadway icy and slick at the time of the accident. However, all other facts surrounding the accident were disputed. According to Appellant's testimony, she was driving her vehicle in the right lane on the interstate at approximately 45 miles per hour when she noticed a tractor trailer (operated by Appellee) approaching directly behind her. She stated that as the truck attempted to pass her by moving from the right lane to the center lane, it clipped her left rear bumper, forcing her vehicle to move to the left and collide with the truck, with the result that she was again hit in the driver's door. Appellant testified she lost consciousness and had no recollection of any subsequent events.

Appellee, on the other hand, testified that he first observed Appellant's vehicle rocking back and forth sideways in the middle of the interstate. Appellee stated that when he realized Appellant's vehicle was not going to move, he reduced his speed by gearing down and letting off the accelerator, but was unable to avoid a collision. Appellee's truck hit Appellant's vehicle in the left rear, causing the vehicle to turn where he again struck it in the driver's door.

Following a four day trial in January 1993, the jury found in favor of Appellant and returned a verdict which apportioned the fault seventy percent to Appellant and thirty percent to Appellee. In an unpublished opinion, the Court of Appeals affirmed the trial court, except for the issue of damages. Appellant had introduced medical expenses in the amount of $35,000, however, the jury returned a zero verdict for those damages. The Court of Appeals opined that such occurred because the jury was informed that Appellant's medical bills were paid by a collateral source. The court pointed out that although such evidence was proper pursuant

to KRS 411.188, which provided for the admissibility of collateral source evidence, this statute was subsequently ruled unconstitutional by this Court in *O'Bryan v. Hedgespeth*, Ky., 892 S.W.2d 571 (1995). The Court of Appeals concluded that a retroactive application of *Hedgespeth* was appropriate and remanded the action for a new trial on the issue of damages for medical expenses.

Appellant moved for discretionary review by this Court and raised several issues which were not addressed by the Court of Appeals. Appellee subsequently filed a cross-appeal as to the retroactive application of *Hedgespeth*, *supra*. This Court accepted discretionary review and we now affirm in part and reverse in part the decision of the Court of Appeals. Additional facts will be set forth in the course of this opinion.

## I. JURY INSTRUCTIONS

Appellant's first allegation of error concerns instruction No. 4 which defined the duties imposed upon Appellant in operating her vehicle:

*Instruction No. 4:*

It was the duty of Plaintiff Karen Burns in the operation of her automobile to exercise ordinary care for herself and for other vehicles using the highways, and this general duty included the following specific duties . . .

(d) Not to drive her automobile at such a slow speed as to impede or block the normal and reasonable movement of other traffic, having regard for the traffic and for the condition and use of the highway;

(e) If she became aware or by the exercise of ordinary care should have become aware that defendant Level's truck was passing or attempting to pass, to give defendant Level's truck such assistance and cooperation as the circumstances reasonably demanded in order to obtain clearance and avoid an accident[.]

Appellant argues that instructions 4(d) and 4(e) were not supported by the evidence nor authorized by statutory law. Further, Appellant maintains that the duties imposed in 4(d) and 4(e) do not apply to accidents occurring on interstate highways. We disagree.

Instruction 4(d) was premised upon the language of KRS 189.390(6), which provides that "[a] person shall not drive a motor vehicle at a speed that will impede or block the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with the law." Thus, statutory authority did, in fact, support instruction 4(d).

■ Further, Appellee testified that he first became aware of Appellant's vehicle in the center lane "rocking back and forth." Clearly, this testimony created a jury question as to whether Appellant was impeding or blocking the normal flow of traffic. Appellant contends that since there was no evidence indicating what caused her vehicle to be in the position described by Appellee, an instruction as to her duty not to drive too slowly or impede the flow of traffic was irrelevant. Appellant ignores the fact that Appellee's testimony placed her vehicle in the path of his truck. Certainly, Appellant's vehicle arrived in that position for some reason, albeit unknown, and a jury instruction as to whether she was impeding the flow of traffic was warranted.

■ Likewise, Appellant's own testimony justified instruction 4(e). Appellant testified that she observed Appellee's truck attempting to pass her vehicle and acknowledged that she was aware the truck was going to collide with her vehicle. Yet, on cross-examination, Appellant conceded she took no action to avoid the accident by clearing the way. We disagree with Appellant's proposition that imposing the duty delineated in 4(e) "would create a situation where the driver of a motor vehicle driving within the confines of their [sic] own lane and within the posted speed limit would be held liable for the actions of someone driving negligently behind them [sic]." Once there was evidence of a passing type situation, it was the trial court's responsibility to provide the instructions regarding the respective duties of each party. We note that the jury was also instructed as to Appellee's duties in operating his truck in a passing situation.

■ Finally, Appellant argues that the instructions are erroneous because the duties

set forth in 4(d) and 4(e) do not apply to accidents occurring on interstates. We are unpersuaded by this argument and fail to discern any logical reason for holding that such duties should not apply on interstate highways where there is a higher rate of speed. Similar instructions have previously been held proper for traffic on four lane highways; therefore, there is no reason for excluding the same rationale for traffic on interstate roadways. *See Ford v. Robinson,* Ky., 428 S.W.2d 772 (1968) and *City of Louisville v. Maresz,* Ky.App., 835 S.W.2d 889 (1992). Moreover, KRS Chapter 189, and in particular KRS 189.390(6), is not limited to any particular roadway, highway, or portion thereof, but rather is a broad prohibition that applies to all vehicles on public roadways. We find no error in the instructions.

## II. DIRECTED VERDICT ON CLAIM FOR PERMANENT IMPAIRMENT TO EARN MONEY

Appellant claims error in the trial court's granting a directed verdict dismissing her claim for permanent impairment to earn money. The ruling was premised on Appellant's failure to comply with CR 8.01(2) which provides, in part:

When a claim is made against a party for unliquidated damages, that party may obtain information as to the amount claimed by interrogatories; if this is done, the amount claimed shall not exceed the last amount stated in answer to interrogatories.

In the first set of interrogatories propounded to Appellant, Interrogatory No. 3 requested, "Itemize all expenses and losses for which you are claiming damages herein, including, but not limited to, medical expenses and lost wages, if any." In response, Appellant submitted an attachment including an itemization of medical bills, as well as general claims for other damages including pain and suffering and permanent impairment to earn money. However, no monetary figures were provided for the general claims. Similarly, in response to Appellee's request to supplement interrogatory answers, Appellant again only made reference to her general claim, which failed to provide specific information about the amount claimed for permanent impairment to earn money.

Appellant argues that she was not aware or required to specify a specific monetary figure for permanent impairment to earn money. She further contends that the doctrine of *ejusdem generis* applies to Interrogatory No. 3 and that what the question required were only those items of special damage known to Appellant, such as medical expenses and lost wages. *Steinfeld v. Jefferson County Fiscal Court,* 312 Ky. 614, 229 S.W.2d 319 (1950). We find this argument to be without merit.

Based upon Appellant's inclusion of a general claim for permanent impairment to earn money, there can be no doubt that Appellant understood that the plain meaning of the interrogatory sought information concerning *all* damages. The question clearly expressed an intention not to be limited to the specific items mentioned, but rather requested all damages, "including but not limited to . . ." the specific items enumerated.

CR 8.01(2) was construed in *National Fire Insurance Company v. Spain,* Ky.App., 774 S.W.2d 449 (1989), in which the Court of Appeals stated:

The last sentence of the rule clearly states, in effect, that if a claim for unliquidated damages is made, the party against whom the claim is made may seek information as to the amount of the claim by interrogatories. If this is done, the amount claimed shall not exceed the last amount stated in answer to interrogatories.

*Id.* at 451; *See also* 6 Bertelsman & Phillips, *Kentucky Practice,* CR 8.01, Comment 5 (4th ed.1984). The court in *Spain, supra,* held that because the appellee never undertook to provide the amounts of several items of damages in response to interrogatories, the appellee was precluded from recovering those sums at trial. *Id.*

Here, Appellant was requested in two sets of interrogatories to specify all damages, including permanent impairment to earn money. As she failed to do so, we cannot conclude that the trial court abused its discretion in granting a directed verdict

dismissing Appellant's claim for those damages.

### III. COLLATERAL SOURCE RULE AND RETROACTIVE APPLICATION OF *O'BRYAN V. HEDGESPETH*

At trial, Appellee cross-examined Appellant about payment of a medical bill introduced into evidence by Appellant, thus resulting in the admission of collateral source evidence. KRS 411.188. Appellant objected to the cross-examination solely on the grounds that Appellee was required to first establish the bills were, in fact, paid. On appeal, the Court of Appeals held that while Appellee may have relied upon KRS 411.188 when introducing the collateral source evidence, such reliance was in error in light of this Court's decision in *O'Bryan v. Hedgespeth*, Ky., 892 S.W.2d 571 (1995), which held KRS 411.188 unconstitutional. Thereafter, the Court of Appeals, without the benefit of prior briefing by the parties, retroactively applied *Hedgespeth, supra*, and remanded the case for a new trial in consideration of said decision.

█ The constitutionality of KRS 411.188 was not challenged at the trial level, and the Attorney General was not notified concerning the constitutional challenge of the statute as required by KRS 418.075. In fact, the constitutional issue was only raised for the first time in any court on the day of oral argument in the Court of Appeals. Nonetheless, the Court of Appeals *sua sponte* addressed the constitutional issue and reasoned that the trial court's admission of collateral source evidence constituted palpable error under CR 61.02. We must disagree.

█ This Court in *Carrs Fork Corp. v. Kodak Mining Corp.*, Ky., 809 S.W.2d 699 (1991), held that "[i]n applying [CR 61.02], palpable error must result from action taken by the Court rather than from an act or omission by the attorneys or litigants." *Id.* at 701. "Palpable" is defined as easily perceptible, plain, obvious and readily noticeable. *Blacks Law Dictionary* (6th ed.1995). At the time of trial, KRS 411.188 was presumed constitutional in providing for the admission of collateral source evidence. Thus, it was not possible for the trial court to have

committed palpable error in following the law as it was then stated. This is especially true since this trial was concluded two years before the decision in *Hedgespeth, supra*, which ruled KRS 411.188 unconstitutional. We are of the opinion that error, if any, must arise from the failure of Appellant to raise a constitutional objection to KRS 411.188 in the trial court. However, such omission by Appellant does not equate to palpable error.

█ This Court has held that there should be no retroactive application of a new decision, as in *Hedgespeth, supra*, unless the issue was preserved and, if necessary, constitutional issues properly raised during the pendency of the case. *Hedgespeth, supra; Maney v. Mary Chiles Hospital*, Ky., 785 S.W.2d 480 (1990); *Pendleton v. Pendleton*, Ky., 560 S.W.2d 538 (1977); *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984). To allow unrestricted retroactive application of new decisions holding statutes unconstitutional would virtually prevent finality of litigation and leave all judgments subject to later attack in the event the statutory basis was overturned. As such, we conclude that because Appellant failed to properly preserve the issue, the Court of Appeals erred in retroactively applying *O'Bryan v. Hedgespeth, supra*.

We have reviewed Appellant's other arguments presented in her brief and find no error. Therefore, the decision of the Court of Appeals is hereby affirmed in part and reversed in part. This case is remanded to Boone Circuit Court for proceedings consistent with this opinion.

All concur.