# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MAY 5, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000170-MR

RAY HACKER                                                            APPELLANT

V.                       ON APPEAL FROM JACKSON CIRCUIT COURT
HONORABLE OSCAR G. HOUSE, JUDGE
NO. 10-CR-00036

COMMONWEALTH OF KENTUCKY                           APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Ray Hacker appeals as a matter of right from the Jackson Circuit Court's judgment sentencing him to a 50-year prison term for the murder of his girlfriend, Gerilyn Walerski. Hacker's case reaches this Court for the second time after our prior reversal due to evidentiary errors in the first trial. In this appeal, Hacker argues that the trial court erred when it admitted into evidence the testimony of two witnesses from the first trial. According to Hacker, admission of this testimony impeded his ability to cross-examine those witnesses regarding his new theory of defense. Hacker also argues that the witnesses' testimony unduly prejudiced him because it revealed to the jury that Hacker had already been tried. For the following reasons, we affirm.

## I. BACKGROUND

This case originally went to trial on February 14, 2012. Following trial, the jury convicted Hacker of murder, and he appealed to this Court as a matter

of right. This Court reversed and remanded for a new trial because the trial court had erroneously permitted the Commonwealth to introduce into evidence a police report regarding a prior incident of domestic violence involving Hacker and Walerski. *Hacker v. Commonwealth*, No. 2012-SC-000269-MR, 2014 WL 1664232 (Ky. 2014). In our previous opinion, we set forth the following relevant facts:

> Having recently relocated from Florida, Ray Hacker and girlfriend Gerilyn Walerski shared a rented room in the home of Jackson County, Kentucky resident Raymond Crouch.[1] On June 13, Crouch's stepdaughter Connie Worthington, who was visiting Crouch at the time, witnessed Hacker and Walerski drinking and bickering throughout the day. That afternoon, Crouch and Worthington watched Hacker enter the living room, retrieve a rifle from behind a flag-stand, and head toward the bedroom that he shared with Walerski. After hearing what Worthington described as the sound of a B.B. gun firing, Crouch confronted Hacker, who stated that "there was only one [bullet] in the gun and it's in the back of her head." Hacker then began to suffer a seizure and left the residence, but remained on the front porch until the police arrived. First responders found Walerski lying on the floor having suffered a fatal gunshot wound to the head.

*Id.* at *1.

During the first trial, Hacker's theory of defense was that the shooting was accidental. In support of that theory, Hacker testified that he heard a scream coming from the bathroom and, when he opened the bathroom door, he found Walerski pointing the rifle at her own head. According to Hacker, he and Walerski struggled for control of the rifle and, during the struggle, it accidentally discharged, killing Walerski. During the second trial, Hacker

---

[1] This Court's original opinion incorrectly referred to Raymond Crouch as "Raymond Couch." We now correctly refer to him as "Crouch" throughout the previous opinion's summary of the facts.

2

planned to use a new and alternative theory of defense – that he shot Walerski while under the influence of extreme emotional disturbance.

At a pretrial conference, the Commonwealth stated that it intended to use video recordings from the first trial of the testimony of Savannah Gibson[2] and Raymond Crouch. Because Gibson was in labor and Crouch had died, the court deemed that neither was available. The court asked Hacker if he wanted to continue the trial until Gibson could be available, but he declined the court's offer, stating that he did not object to the admission of Gibson's testimony. However, Hacker objected to the admission of Crouch's testimony arguing that he would not be able to cross-examine Crouch based on his new theory of defense. The court overruled Hacker's objection and permitted the Commonwealth to play video of the testimony of Gibson and Crouch from the first trial.

In support of his new theory of defense, Hacker provided evidence that: he and Walerski had been consuming alcohol and pills throughout the day; he and Walerski constantly argued and were arguing that day; Walerski was often the instigator of such arguments; and during their argument that day Walerski accused him of being responsible for the death of his son.[3] The jury was not

---

[2] Hacker's brief refers to Gibson's first name as "Savannah" while the Commonwealth's brief refers to her as "Savannie." We choose to refer to her as "Savannah."

[3] The record is unclear regarding the exact details of Hacker's son's death. At trial, Crouch's and Worthington's testimony made reference to an automobile accident which apparently resulted in the death of Hacker's son. The only relevance this has is Walerski's alleged badgering of Hacker regarding this incident, which Hacker presents as evidence in support of his claim of extreme emotional disturbance.

swayed by Hacker's extreme emotional disturbance defense, and it convicted him of murder and recommended a sentence of 50 years' imprisonment. This appeal followed.

## II. STANDARD OF REVIEW

The issues raised by Hacker have different standards of review. Therefore, we set forth the appropriate standard of review as we address each issue.

## III. ANALYSIS

At the outset of our analysis we reiterate that Hacker raises two issues with regard to the testimony of Gibson and Crouch. According to Hacker, playing the video of their prior testimony: (1) impeded his ability to cross-examine them; and (2) unduly prejudiced him by revealing that he had been previously tried. Hacker's arguments do not differentiate between Gibson's and Crouch's testimony. However, as set forth below, they must be analyzed separately, in part because Hacker did not properly preserve the first issue as to both, and he did not properly preserve the second issue as to either.

### A. Admission of Gibson's Testimony Did Not Impermissibly Impede Hacker's Ability to Cross-Examine Her.

Hacker did not object to the admission of Gibson's testimony before or at trial, stating that he would rather proceed with trial than seek a continuance until Gibson could be present and subject to cross-examination. This issue is therefore unpreserved. Kentucky Rule of Criminal Procedure (RCr) 10.26 allows review of an unpreserved error; however, relief will only be granted if the error affects the substantial rights of the appellant. An error affects the

4

substantial rights of the appellant if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Commonwealth v. Rodefer*, 189 S.W.3d 550, 553 (Ky. 2006). To determine if an error is palpable, "an appellate court must consider whether on the whole case there is a substantial possibility that the result would have been any different." *Commonwealth v. McIntosh*, 646 S.W.2d 43, 45 (Ky. 1983). To be palpable, an error must be "easily perceptible, plain, obvious and readily noticeable." *Burns v. Level*, 957 S.W.2d 218, 222 (Ky. 1997) (citing *Black's Law Dictionary* (6th ed. 1995)). A palpable error must be so grave that, if uncorrected, it would seriously affect the fairness of the proceedings. *Ernst v. Commonwealth*, 160 S.W.3d 744, 758 (Ky. 2005). Admission of Gibson's testimony does not meet this standard for the following reasons.

Testimony from an unavailable witness is not excluded if the testimony was given by "a witness at another hearing of the same or a different proceeding . . . if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Kentucky Rule of Evidence (KRE) 804(b)(1). "[B]efore a witness's prior testimony can be introduced against a defendant at trial, (1) the prosecution must demonstrate that the witness is 'unavailable;' and (2) once the witness is deemed 'unavailable,' the witness's prior statements are admissible only if they bear adequate 'indicia of reliability.'" *Lovett v. Commonwealth*, 103 S.W.3d 72, 82-83 (Ky. 2003) (citing *Ohio v. Roberts*, 65 Led.2d 597 (1980)). Hacker does not contest that Gibson was unavailable or

5

the reliability of her testimony. As noted above, he objects because he believes admission of Gibson's testimony impeded his ability to cross-examine her regarding his extreme emotional disturbance defense.

During the first trial, Gibson testified that she did not live with Crouch, Hacker, or Walerski. But she knew Hacker and Walerski would sometimes argue. The day Walerski was killed, Gibson was at Crouch's house helping Worthington care for her grandson. Gibson did not see Hacker and Walerski arguing that day; did not even realize they were in the house until she heard the gunshot; and did not interact with Hacker that day after Walerski's death. Although he argues that he would have cross-examined Gibson differently at the second trial, Hacker does not specify what he would have asked Gibson or how his cross-examination would have differed. Furthermore, in light of Gibson's lack of interaction with Hacker that day, we do not see how she could have given any different testimony that would have supported his extreme emotional disturbance defense. For these reasons, admission of Gibson's testimony did not impermissibly impede Hacker's right to cross-examination.

## B. The Trial Court Did Not Abuse Its Discretion When It Admitted Raymond Crouch's Testimony Into Evidence.

Hacker objected to the admission of Crouch's testimony during a pretrial conference, and the issue is therefore properly preserved. We review the court's admission of Crouch's testimony for abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable,

6

unfair, or unsupported by sound legal principles." *Woodard v. Commonwealth*, 147 S.W.3d 63, 67 (Ky. 2004).

As stated above, admission of testimony from a prior trial is generally permissible so long as the defendant was represented by counsel who was able to cross-examine the witness at the time the testimony was given. KRE 804(b)(1). However, as with Gibson's testimony, Hacker does not argue that admission of Crouch's testimony violated this rule. He argues that the change in the defense's theory in the second trial rendered the prior cross-examination inadequate to comply with the Confrontation Clause. Hacker cites no case law supporting his claim that a change in defense theory between trials renders prior cross-examination inadequate. Furthermore, as with Gibson, Hacker does not specify how he would have changed his cross-examination of Crouch had Crouch been available to testify.

During the first trial, Crouch testified on cross-examination that: Hacker and Walerski argued all the time; he never heard Hacker threaten Walerski but heard Walerski threaten Hacker on multiple occasions; he had never seen Hacker hit Walerski but had seen Walerski hit Hacker; both Hacker and Walerski drank a great deal every day and Walerski was "nuts" when she drank; Hacker and Walerski were fighting and drinking the day Walerski was shot; and Hacker had a seizure after Walerski was shot. These facts support Hacker's extreme emotional disturbance theory of defense in his second trial and he has not stated what other facts he would have or could have learned through a second cross-examination of Crouch. Since Hacker has been unable

to show how his inability to cross-examine Crouch at the second trial would have had any impact on the outcome, we hold that the trial court did not abuse its discretion by admitting Crouch's testimony from the first trial.

Furthermore, even if Crouch's unavailability did prejudice Hacker, he was not deprived of the ability to present his defense. Worthington, who testified live at both trials, testified that Hacker and Walerski argued frequently and that Walerski was always the instigator of these arguments. When asked to describe the types of arguments that Hacker and Walerski would have, Worthington testified that: Walerski hated living in Kentucky and always blamed Hacker for making her move from Florida; Walerski blamed Hacker for wrecking his car; Walerski blamed Hacker for the death of his son; she had seen Walerski hit Hacker but had never seen Hacker hit Walerski; Hacker and Walerski were always drinking; and Walerski was "a pure bitch," "obnoxious," and "embarrassing." As to the day of the murder, Worthington testified that Hacker and Walerski were arguing and during this argument Walerski again accused Hacker of causing his son's death, to which Hacker responded "shut your F-ing mouth," which was the loudest Worthington had heard Hacker yell that day. This testimony by Worthington supported Hacker's extreme emotional disturbance defense.

## C. The Trial Court Did Not Err When It Allowed Testimony That Indicated Another Trial Previously Took Place.

Hacker did not raise this issue at trial. The issue is therefore unpreserved, and we review it for palpable error. RCr 10.26.

Hacker claims that Crouch's and Gibson's testimony from the first trial informed the jury that a previous trial had taken place and thus improperly prejudiced him before the jury in the second trial. Hacker cites to no rule of evidence or case law to support this claim nor does he indicate how the jury's knowledge that a previous trial took place prejudiced him. Furthermore, KRE 804(b)(1) permits witness testimony from a previous trial to be admitted under circumstances such as these. The rule does not state that the jury in a subsequent trial must be shielded from all knowledge of the prior trial, implying that such knowledge is not unduly prejudicial. In fact, under our current system of court reporting, *i.e.* recorded video, it would be nearly impossible to shield the jury from knowing about a prior trial while admitting video testimony from that trial. Finally, although we discern no error, even if there was error, Hacker has failed to show how it prejudiced him in such a way as to constitute manifest injustice.

## IV. CONCLUSION

For the reasons stated herein, we affirm.

Minton, C.J., Cunningham, Keller and Venters, JJ., concur. Hughes, J., concurs in result only by separate opinion in which Noble and Wright, JJ., join.

HUGHES, J., CONCURRING IN RESULT ONLY: I respectfully concur in result only. I write separately to address the Court's review of Hacker's claims regarding his inability to cross-examine Savannah Gibson during trial. At a pretrial conference, Hacker was alerted by the Commonwealth that it intended to use a video recording of Gibson's testimony from Hacker's first trial. Gibson,

9

pregnant at the time of the second trial, was unavailable to testify due to her being in active labor. The trial court expressly inquired of Hacker if he wished to continue the trial until Gibson was available, but Hacker declined the offer, preferring to proceed to trial. In addition, Hacker did not raise an objection to the trial court's designating Gibson as unavailable nor to the jury's review of Gibson's recorded testimony.

By declining to ask the trial court to continue the trial and instead affirmatively requesting that the trial proceed, Hacker's appellate claims regarding his inability to cross-examine Gibson were not merely unpreserved, they were invited. "Generally, a party is estopped from asserting an invited error on appeal." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37 (Ky. 2011) (citing *Gray v. Commonwealth*, 203 S.W.3d 679 (Ky. 2006)). Unlike forfeited errors which are reviewed for palpable error, this Court has recognized that invited errors constitute a waiver and are not subject to appellate review. *Id.* at 38. As such, Hacker's claims regarding his inability to cross-examine Gibson are waived and should not be reviewed by this Court for palpable error. In sum, while I believe that Hacker's alleged errors were properly rejected by this Court, I disagree with the rationale employed by the Court in doing so as to Gibson's recorded testimony.

Noble and Wright, JJ., join.

COUNSEL FOR APPELLANT:

Samuel N. Potter
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General

Julie Scott Jernigan
Assistant Attorney General