# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: FEBRUARY 15, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0439-MR

TERRY NEAL STRODE                                      APPELLANT

V.               ON APPEAL FROM MONROE CIRCUIT COURT
                  HONORABLE DAVID L. WILLIAMS, JUDGE
                      NO. 22-CR-00032

COMMONWEALTH OF KENTUCKY                          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Terry Neal Strode appeals from his convictions after a jury trial of trafficking in a controlled substance and possession of a controlled substance. The jury found Strode to be a subsequent offender regarding the trafficking charge and recommended a sentence of twenty years' together with a sentence of three years' for possession of hydrocodone, all to be served concurrently. The trial court sentenced him in conformity with that recommendation.

Strode argues the Monroe Circuit Court committed palpable error by reading to the jury those portions of Strode's indictments which referenced his alleged crimes as being "second offenses" and by allowing the Commonwealth to question Strode about the circumstances of his prior felony trafficking conviction.

# I. FACTUAL AND LEGAL BACKGROUND

On February 23, 2022, a confidential informant working for Kentucky State Police (KSP), was given cash to purchase methamphetamine from Strode in a "controlled buy." After visiting Strode at Strode's residence, the informant provided KSP with 2.7 grams of methamphetamine. A search warrant was then issued for Strode's residence and executed the next day.

During the search, Strode admitted having methamphetamine on his person and stated it was for his personal use. A pill bottle was found on him containing over two grams of methamphetamine. Strode also had a wallet containing $2,700.00 in cash including $320.00 of the bills received from the informant. Strode denied having any other drugs other than what was in his pill bottle. However, in Strode's residence, KSP also found methamphetamine residue on a metal tray, three pill bottles containing hydrocodone, a meth pipe, a bong, and a black box matching a description given by the informant that contained clear plastic baggies, a scale, pill bottles, a syringe, a measuring scoop, a glass vial and a bottle of hand-cleaner with a false bottom. Detectives also located a .22 magnum revolver which was unlawful for Strode to possess given his prior felony conviction for methamphetamine trafficking. In a closet, the officers also found a Horse Cave Police Department uniform jacket as well as a bulletproof vest. In the basement, a PVC pipe was found, which was "stuffed" with marijuana.

Strode was arrested and later indicted on two counts of first-degree trafficking in a controlled substance (second offense), one count for the

methamphetamine allegedly sold to the informant and one count for the methamphetamine found in his residence. He was also indicted for one count of trafficking in a controlled substance for the hydrocodone recovered during the search of his residence, and one count each for possession of drug paraphernalia, possession of marijuana, and possession of a handgun by a convicted felon. Prior to trial commencing, the Commonwealth asked the trial court to sever the possession of a handgun by a felon charge, stating it "would be too prejudicial [to Strode] in the proof of guilt phase." Strode's counsel did not object and the charge was not prosecuted in this trial.

Strode chose to testify in his defense and stated that while he and the informant had used drugs together, he had not sold him drugs. In Strode's version of events, the informant had come to his house with cash to pay him for a trailer that Strode had sold him the day before.[1]

The jury ultimately found Strode not guilty of trafficking methamphetamine to the informant, but found him guilty of the second charged offense of trafficking methamphetamine based upon what was found in his residence. He was also found guilty of the lesser included offense of possession of the hydrocodone rather than trafficking in hydrocodone which was charged in the indictment.

---

[1] During cross-examination by the Commonwealth, Strode refused to identify who supplied him with his drugs. The trial court refused Strode's offer to identify his supplier outside the presence of the jury and held Strode in contempt, sentencing him to 179 days in addition to any other sentence he might receive.

During the penalty phase, the jury found Strode to be a subsequent offender regarding the trafficking charge and recommended a sentence of twenty years'. The jury also recommended a sentence of three years' for the possession of hydrocodone, with both sentences to run concurrently. Strode was sentenced in accordance with the jury's recommendations.

## II. LEGAL ANALYSIS

Strode raises two legal issues, both of which relate to his prior trafficking conviction which was first referenced during *voir dire* and then brought up again during the Commonwealth's cross-examination of Strode during the guilt phase of his trial. However, neither of these alleged errors were preserved by a proper and contemporaneous objection. Consequently, we may only afford relief to Strode upon satisfaction of the rigorous palpable error standard found in Kentucky Rule of Criminal Procedure (RCr) 10.26, which states:

> A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

As summarized in *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006):

> For an error to be palpable, it must be "easily perceptible, plain, obvious and readily noticeable." A palpable error "must involve prejudice more egregious than that occurring in reversible error[.]" A palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings. Thus, what a palpable error analysis "boils down to" is whether the reviewing court believes there is a "substantial possibility" that the result in the case would have been different without the error. If not, the error cannot be palpable.

4

*Id.* (footnotes omitted) (quoting *Burns v. Level,* 957 S.W2d 218, 222 (Ky. 1997), abrogated on other grounds by *Nami Res. Co., L.L.C. v. Asher Land and Mineral, Ltd.,* 554 S.W.3d 323 (Ky. 2018); *Ernst v. Commonwealth,* 160 S.W.3d 744, 758 (Ky. 2005); *Schoenbachler v. Commonwealth,* 95 S.W.3d 830, 836 (Ky. 2003)).

## A. Did the Trial Court Commit Palpable Error by Reading Portions of the Indictment Referencing Strode Committing a Second Offense? – Unpreserved

During *voir dire*, the trial court read the remaining counts of the indictment verbatim, which informed the prospective jurors that Strode was charged with "second offense" trafficking of a controlled substance. No objection was made by Strode's counsel nor was any admonition requested.

After the jury was selected and excused for lunch, the Commonwealth's Attorney initiated the following discussion which referenced the reading of the indictment:

> Commonwealth:  This is something I didn't know how to approach Judge. You read the indictments verbatim.
>
> Trial Court: Yes
>
> Commonwealth:  And each one of the first three counts are second offenses. So are we going to have in the guilt phase proof.
>
> Trial Court:  I believe there's no other way to do it.
>
> Commonwealth:  Okay.
>
> Strode's Counsel:  I would object your Honor and state that . . .
>
> Trial Court:  Do you have any law?
>
> Strode's Counsel:  I'll look at it over the lunch. I mean, I think it should be bifurcated.
>
> Trial Court:  The only thing you can bifurcate in a trial is the guilt phase and the penalty phase. Okay now. There, there would be a situation you can see that if they convicted of this and in the

5

second phase they could introduce evidence he had ever been convicted before.

Commonwealth: In, in the penalty phase you can bring the whole.

Trial Court: I understand that, but it would, it would, that would appear to me just to be a situation where the penalty—there is no, there's no difference between the elements of a first and second conviction other than a prior conviction, so I don't know how you can present the case without presenting the case that he had a prior conviction if that's the law. It's not just in the sentencing that it takes it up. You could look at it that it doesn't apply, that you take it up in the sentencing, to take it up to the next level. Do you know what I'm saying?

Strode's Counsel: Yes, sir.

Trial Court: So, think about that. We've still got plenty of time to do the instructions. I've got the instructions and I'll call [staff attorney] and have her take a look at it.

Commonwealth: Okay. I just thought it was an issue that I didn't know, and I just wanted some direction.

Trial Court: Okay do a little research instead of doing lunch. You can research during lunch.

There appears to be no further discussion regarding the reading of the indictment in the record, and we do not recognize Strode's counsel's "objection" in this discussion to have been a belated objection directed at the previously read indictment. It is obvious from the context of this discussion that counsel and the trial court were not discussing the error of reading the second offense portions of the indictment but instead were deliberating on "when" (either during the guilt phase or the penalty phase of the trial) evidence of Strode's prior trafficking conviction could be presented by the Commonwealth to prove the second offense "element" of the alleged crimes.

6

Evidence of a prior conviction introduced only for enhancement purposes should be reserved to the penalty phase of a trial. *Commonwealth v. Ramsey,* 920 S.W.2d 526, 528 (Ky. 1996). In *Lewis v. Commonwealth*, 642 S.W.3d 640, 643 (Ky. 2022), we specifically found that a trial court erred by reading portions of the defendant's indictment during the guilt phase of the trial that mentioned his previous convictions and discussed the fact that such information violated Kentucky Rule of Evidence (KRE) 404(b), which generally prohibits evidence of other crimes committed by defendants which is introduced for the purpose of proving the defendant's character "in order to show action in conformity therewith." However, we did not reverse Lewis's conviction because "[b]reaches of KRE 404(b)'s rule against the admission of prior bad acts as character evidence are generally subject to admonitory cures[,]" and after Lewis objected, the trial court recognized the error and admonished the jury to disregard the information which we deemed to be acceptable. *Lewis*, 642 S.W.3d at 643.

While the trial court should not have read the full indictment to the jury which, by implication, informed them that Strode had been previously convicted of the same crime, this does not mean that this error constitutes a reversible error. Here, unlike in *Lewis*, Strode made no objection to the trial court reading the indictment which included the "second offense" language[2]

---

[2] "As a general rule, a party must make a proper objection to the trial court and request a ruling on that objection or the issue is waived." *Brooks v. Commonwealth*, 114 S.W.3d 818, 825 (Ky. 2003) (citing *Commonwealth v. Pace*, 82 S.W.3d 894 (Ky. 2002); *Bell v. Commonwealth*, 473 S.W.2d 820 (Ky. 1971)).

7

*and* those few words were substantially less prejudicial to Strode than his own later testimony to that effect which we will next discuss. Under these circumstances, we find that the trial court's error was harmless and did not rise to the level of palpable error necessary to reverse Strode's conviction.

**B. Did the Commonwealth Commit Palpable Error by Questioning Strode about his Prior Conviction? – Unpreserved**

Strode also argues that the trial court erred in allowing the Commonwealth's Attorney to ask Strode questions about his prior conviction during the guilt phase of the trial. We do not agree with Strode that his counsel's previous (and unexplained) objection made during the bench conference regarding the proper time to establish a prior offense preserved this later occurring assignment of error and will again review this matter under a palpable error standard.

During his direct examination, Strode admitted possession of the methamphetamine found pursuant to the search warrant but denied having any intent to sell it. Then, during cross-examination, Strode was questioned by the Commonwealth regarding his prior trafficking conviction and testified as follows:

Q: Mr. Strode, have you ever been convicted of a felony?

A: Yes, sir, I have.

Q: And what was the last felony?

A: Trafficking. I used to sell drugs, I did.

Q: Trafficking in what?

A: A controlled substance. Methamphetamine.

8

Q: O.K.

A: And I pled guilty to it, got a 15-year sentence, done time in jail, and served it out on probation[.]

Defense counsel not only did not object at any point during this questioning but, on redirect, also had his client repeat the fact:

Q: Terry, you've admitted that you're a convicted felon?

A: Yes, sir.

Q: You've used methamphetamine in the past?

A: Yes, sir.

Q: You were using methamphetamine at the time that these events occurred?

A: Yes.

Later, during re-cross, Strode again testified about his prior trafficking, this time without any prompting by the Commonwealth:

Q. Mr. Strode, did I just hear you when you were talking about hydrocodone, you said you didn't move it?

A. I mean, if I ever did –

Q. That's what you said, wasn't it?

A. Yeah, I used to move drugs. That's something you'd never see me move, ever. I used to sell drugs. But I did not sell or mess with any type of pain pills. Did not mess with any type of pain pills or anything. Do I sell drugs now, no. Did I sell him drugs, no. Did I used to, yes. That's why I accepted a deal for fifteen years[.]

At that juncture, the trial court precluded any further questioning or testimony regarding the time Strode had served but at no time did Strode's counsel object or request any type of admonition.

9

Strode argues correctly that, regarding impeachment for being a convicted felon, under KRE 609(a), "[t]he identity of the crime upon which [a] conviction was based may not be disclosed upon cross-examination unless the witness has denied the existence of the conviction." Therefore, under KRE 609(a), once Strode admitted to having a prior felony trafficking in a controlled substance conviction, the Commonwealth was precluded from asking any more specifics about the crime. Albeit in a different context, our Supreme Court has held that "[i]t is a fundamental principle that the introduction of a previous conviction during the process of determining guilt or innocence is prejudicial." *Dedic v. Commonwealth*, 920 S.W.2d 878, 879 (Ky. 1996) (citing *Jones v. Commonwealth*, 198 S.W.2d 969 (Ky. 1947)).

In response, the Commonwealth argues that it was entitled to question Strode about his prior criminal activity given that he took the stand and testified that he was not trafficking the very drugs he unquestionably possessed. KRS 404(b)(1) includes several other purposes for which character evidence might be admissible, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . . " Specifically, the Commonwealth argues that Strode's prior trafficking conviction was relevant and probative to determining whether he *possessed* (as he undeniably did) the illicit drugs and paraphernalia associated with sales

10

*with the intent*[3] *to sell* them as opposed to merely having them for personal use. The Commonwealth is correct, we have previously determined that evidence of a prior conviction was admissible to prove motive, intent, and plan to manufacture methamphetamine under KRE 404(b). *Hayes v. Commonwealth*, 175 S.W.3d 574, 588 (Ky. 2005). In the context of this case, the facts concerning Strode's prior drug trafficking experience served as an admissible counter to his testimony that he was not dealing in drugs when he was arrested.

Even had Strode persuaded this Court that errors occurred in his trial, he still cannot demonstrate that they likely impacted the outcome of the trial or seriously impacted its overall fairness in light of the abundant physical evidence of drug sales found in his residence. In sum, Strode's earlier conviction was not necessary in determining that he was trafficking and, given that the jury declined to find him guilty of trafficking to the informant (the first count of the indictment) *and* declined to find him guilty of trafficking the hydrocodone he possessed, we cannot see that his prior conviction was relied upon whatsoever by the jury, and no prejudice existed as to warrant a new trial.

---

[3] "'Traffic,' except as provided in KRS 218A.1431, means to manufacture, distribute, dispense, sell, transfer, or possess with intent to manufacture, distribute, dispense, or sell a controlled substance[.]" KRS 218A.010(56). "'Traffic' means to distribute, dispense, sell, transfer, or possess with intent to distribute, dispense, or sell methamphetamine." KRS 218A.1431(3).

## III. CONCLUSION

Accordingly, we affirm Strode's conviction by the Monroe Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Maureen Sullivan

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Bryan D. Morrow
Deputy Solicitor General

Elizabeth Hedges
Assistant Solicitor General